**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

Jennifer Doney,

      Plaintiff,

v.

Salisbury University,

Dr. Carolyn "Lyn" Ringer Lepre,

Dr. Laurie Couch, Dr. Dane Foust,

Ms. Aurora Edenhart-Pepe,        **Civil Action No. 1:25-cv-03918-CJC**

University System of

Maryland Board of Regents,

and other owners, employees,

and agents of Salisbury University,

      Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT' MOTION TO DISMISS**

---

Plaintiff Jennifer Doney, by and through undersigned counsel, respectfully submits this memorandum of law in opposition to Defendants Salisbury University, University System of Maryland Board of Regents, Carolyn Ringer Lepre, Dane Foust, Laurie Couch, and Aurora Edenhart-Pepe's Motion to Dismiss Plaintiff's Complaint.

1

## I.    INTRODUCTION

Plaintiff Jennifer Doney brings this action against Salisbury University and related officials after being dismissed from the University's Master of Social Work program despite Defendants' alleged awareness of her documented disabilities, including severe ADHD and a hearing impairment. Plaintiff alleges that Defendants failed to provide reasonable accommodations, failed to meaningfully engage in the interactive process required under federal disability law, and ultimately dismissed her for conduct directly tied to the very disabilities for which accommodations were needed.

Defendants now seek dismissal by improperly reframing disputed factual allegations as pleading deficiencies. Their motion repeatedly asserts that Plaintiff "never finalized" an accommodation request and therefore cannot state a claim under the ADA or Rehabilitation Act. But the Complaint alleges substantially more. Plaintiff specifically alleges that she initiated the accommodation process, that she contracted COVID-19 during the pandemic and was unable to complete the appointment process, that Defendants were already aware of her documented disabilities and IEP, and that Defendants failed to provide alternatives, reschedule the process, or otherwise engage in the interactive process required by federal law. At the pleading stage, those allegations must be accepted as true and construed in Plaintiff's favor.

Defendants likewise improperly seek dismissal of Plaintiff's procedural due process claim by invoking Eleventh Amendment immunity while ignoring that

Plaintiff seeks prospective equitable and injunctive relief, including reinstatement into the program and institutional compliance measures. Such claims may proceed against state officials in their official capacities under Ex parte Young. Moreover, Plaintiff plausibly alleges that she was deprived of meaningful notice, a meaningful opportunity to be heard, and a fair consideration of her documented disabilities during the disciplinary and dismissal process.

Ultimately, Defendants ask this Court to resolve factual disputes concerning notice, accommodations, causation, and the adequacy of the disciplinary process before discovery has even begun. That is not the function of Rule 12. Because Plaintiff has plausibly alleged violations of the ADA, the Rehabilitation Act, and the Fourteenth Amendment, Defendants' motion should be denied. At minimum, Plaintiff should be granted leave to amend rather than dismissal with prejudice.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the ultimate merits of the claims asserted therein. To survive dismissal, a complaint need only contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In evaluating a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Robertson v. Sea Pines Real Est. Cos., Inc., 679 F.3d 278, 284 (4th Cir. 2012).

3

Dismissal is inappropriate where the complaint alleges facts sufficient to raise a plausible inference that the plaintiff is entitled to relief. Twombly, 550 U.S. at 556.

Although legal conclusions couched as factual allegations need not be accepted as true, courts may not resolve factual disputes, weigh competing inferences, or evaluate the ultimate evidentiary merits of a plaintiff's claims at the pleading stage. See Iqbal, 556 U.S. at 678–79. Rather, the Court's inquiry is limited to whether the complaint plausibly alleges entitlement to relief when the allegations are viewed in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

Likewise, when considering a motion under Rule 12(b)(1), the Court must determine whether it possesses subject matter jurisdiction over the claims asserted. However, where jurisdictional facts are intertwined with the merits of the dispute, dismissal is improper unless the jurisdictional allegations are clearly immaterial, wholly insubstantial, or frivolous. See Kerns v. United States, 585 F.3d 187, 193–95 (4th Cir. 2009). Moreover, claims seeking prospective injunctive relief against state officials for ongoing violations of federal law may proceed under the Ex parte Young doctrine notwithstanding Eleventh Amendment immunity. Ex parte Young, 209 U.S. 123 (1908).

## III.   ARGUMENT

Defendants' motion improperly attempts to convert disputed factual issues into pleading deficiencies and asks this Court to resolve questions that are inappropriate

at the Rule 12 stage. The Complaint alleges that Plaintiff had documented disabilities, that Defendants were aware of those disabilities and her IEP, that Plaintiff initiated the accommodation process but became ill with COVID-19 during the pandemic, and that Defendants thereafter failed to engage in the interactive process or provide reasonable accommodations before dismissing her from the program. Plaintiff further alleges that the conduct relied upon by Defendants in dismissing her was directly impacted by her unaccommodated disabilities and that she was denied meaningful procedural protections during the disciplinary process.

Rather than accepting those allegations as true and drawing reasonable inferences in Plaintiff's favor, Defendants selectively isolate portions of the Complaint and invite the Court to make factual determinations concerning notice, accommodations, causation, and institutional responsibility before discovery has commenced. Because the Complaint plausibly alleges violations of the ADA, the Rehabilitation Act, and Plaintiff's procedural due process rights, the motion should be denied.

## A. Plaintiff Has Plausibly Alleged Violations of the ADA and Rehabilitation Act.

To state a claim under Title II of the ADA or Section 504 of the Rehabilitation Act, a plaintiff must plausibly allege that: (1) she has a disability; (2) she is otherwise qualified to receive the benefits of the program or activity at issue; and (3) she was excluded from participation in or denied the benefits of such program by reason of her disability. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d

474, 498 (4th Cir. 2005). Claims under the ADA and Rehabilitation Act are generally analyzed together because the statutes impose substantially similar requirements. Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461–62 (4th Cir. 2012). The Complaint adequately alleges each of these elements.

Here, Plaintiff specifically alleges that she suffers from documented disabilities, including severe ADHD and a hearing impairment, which substantially limit major life activities. Plaintiff further alleges that she maintained a 3.8 GPA while enrolled in Salisbury University's Master of Social Work program, demonstrating that she was otherwise qualified to continue participating in the program with reasonable accommodations. Courts have routinely recognized that allegations of strong academic performance plausibly support the conclusion that a student is otherwise qualified under the ADA and Rehabilitation Act. See Constantine, 411 F.3d at 488–89.

The Complaint additionally alleges that Defendants were aware of Plaintiff's disabilities and IEP, that Plaintiff initiated the accommodation process, and that COVID-19 prevented completion of an accommodations appointment during the pandemic. Plaintiff further alleges that, despite this notice, Defendants failed to provide reasonable accommodations, failed to engage in the interactive process, failed to provide alternative procedures or rescheduling opportunities, and ultimately dismissed Plaintiff for conduct directly related to the very disabilities for which accommodations were sought.

Defendants' argument improperly reframes these factual allegations as a complete failure to request accommodations. But the Complaint does not allege mere silence by Plaintiff. Rather, it alleges that Plaintiff attempted to pursue accommodations, that Defendants were already aware of her disabilities and educational limitations, and that the accommodation process broke down during the COVID-19 pandemic without meaningful follow-up or engagement by the University. At minimum, these allegations plausibly support the inference that Defendants failed to adequately engage in the interactive process required under federal disability law.

While Defendants rely heavily on cases involving students who never informed institutions of their disabilities or never sought accommodations at all, those cases are distinguishable from the facts alleged here. For example, in Halpern, the Fourth Circuit emphasized that the plaintiff repeatedly engaged in objectively disruptive and dangerous misconduct over an extended period and sought accommodations only after extensive disciplinary intervention had already occurred. 669 F.3d at 465–66. By contrast, Plaintiff here alleges that Defendants were already aware of her documented disabilities and IEP, that she initiated the accommodation process before dismissal, and that Defendants failed to continue or meaningfully engage in that process after COVID-19 disrupted the initial appointment.

Moreover, federal disability law imposes obligations beyond merely passively waiting for a student to repeatedly request assistance. The ADA and Rehabilitation Act contemplate an interactive process through which institutions and disabled individuals work toward reasonable accommodations. See Jacobs v. N.C. Admin.

7

Office of the Courts, 780 F.3d 562, 581 (4th Cir. 2015) recognizing that failure to engage in the interactive process may support ADA liability where reasonable accommodations could have been identified. Plaintiff specifically alleges that Defendants failed to engage in that required process despite notice of her disabilities and educational limitations.

Further, Plaintiff plausibly alleges that her dismissal was substantially connected to unaccommodated disability-related limitations. The Complaint alleges that Plaintiff's disabilities impaired her ability to satisfy fieldwork requirements without accommodations and contributed to the alleged incidents of "unprofessionalism" later relied upon as grounds for dismissal. Courts have recognized that dismissing a disabled student for conduct directly tied to unaccommodated disabilities may support claims under the ADA and Rehabilitation Act. See Doe v. Samuel Merritt Univ., 921 F. Supp. 2d 958, 964–65 (N.D. Cal. 2013) denying dismissal where plaintiff alleged disciplinary consequences stemming from disability-related conduct and inadequate accommodations.

Defendants also improperly ask the Court to resolve factual disputes regarding whether Plaintiff sufficiently pursued accommodations after the missed appointment, whether Defendants fulfilled their obligations after receiving notice of Plaintiff's disabilities, whether reasonable accommodations could have mitigated the alleged conduct issues, and whether Plaintiff's dismissal was substantially connected to unaccommodated disability-related limitations. Those are inherently fact-intensive questions inappropriate for resolution on a motion to dismiss. See

8

Constantine, 411 F.3d at 499–500 emphasizing that disability discrimination claims often involve fact-intensive inquiries unsuitable for early dismissal.

At this stage, Plaintiff need only plausibly allege entitlement to relief, not prove her claims. Twombly, 550 U.S. at 556. Because the Complaint plausibly alleges that Defendants failed to reasonably accommodate Plaintiff's disabilities, failed to engage in the interactive process, and dismissed her under circumstances connected to those unaccommodated disabilities, Plaintiff has adequately stated claims under both the ADA and the Rehabilitation Act.

## B. Plaintiff Has Plausibly Alleged a Procedural Due Process Violation Under 42 U.S.C. § 1983.

Plaintiff has also plausibly alleged that Defendants violated her procedural due process rights in connection with her dismissal from Salisbury University's Master of Social Work program. The Fourteenth Amendment prohibits state actors from depriving individuals of protected liberty or property interests without constitutionally adequate procedural safeguards. U.S. Const. amend. XIV, § 1. At the pleading stage, Plaintiff has sufficiently alleged both the existence of a protected interest and the deprivation of that interest through fundamentally deficient procedures.

The Supreme Court has long recognized that students facing serious disciplinary sanctions are entitled to constitutionally adequate procedural protections. See Goss v. Lopez, 419 U.S. 565, 574–75 (1975) holding that students possess constitutionally protected interests in continued public education and may

9

not be deprived of those interests without due process protections. Courts within the Fourth Circuit have similarly recognized that dismissals from graduate and professional educational programs may implicate constitutionally protected interests where the dismissal substantially impacts a student's educational and professional future. See Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 627–28 (4th Cir. 2002) recognizing due process protections in university disciplinary proceedings; Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 73–74 (4th Cir. 1983) acknowledging that disciplinary sanctions imposed by universities require fundamentally fair procedures.

Here, the Complaint alleges that Plaintiff had a significant interest in her continued enrollment in the graduate program and that her dismissal carried substantial academic and professional consequences affecting her future career opportunities. Plaintiff specifically alleges that Defendants dismissed her from the Master of Social Work program based upon allegations of misconduct and "unprofessionalism," thereby impairing her educational standing and future professional prospects. Accepting those allegations as true, Plaintiff has plausibly alleged the deprivation of a constitutionally protected educational and professional interest.

Plaintiff further alleges that Defendants failed to provide her with meaningful procedural protections prior to dismissal. Specifically, the Complaint alleges that Defendants failed to provide proper notice of the allegations and evidence against her, failed to provide a meaningful opportunity to be heard in a fair and impartial forum,

10

and failed to meaningfully consider Plaintiff's disabilities, COVID-19-related limitations, and IEP during the disciplinary process. Plaintiff additionally alleges that she was denied a meaningful appeal process before being dismissed from the program.

These allegations are sufficient to plausibly allege a due process violation. Procedural due process fundamentally requires notice and "some kind of hearing" prior to the deprivation of protected interests. Goss, 419 U.S. at 579. Moreover, the opportunity to be heard must be meaningful and occur "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Whether the procedures afforded were constitutionally adequate depends upon the balancing factors articulated in Mathews, including the private interest affected, the risk of erroneous deprivation through the procedures used, and the governmental interest involved. Id. at 335.

Importantly, even in academic settings where courts afford institutions substantial deference, due process still requires fundamentally fair procedures. See Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 85–90 (1978). While Horowitz distinguished between academic and disciplinary dismissals, the Supreme Court nevertheless emphasized that dismissals involving misconduct-related determinations or reputational consequences may warrant heightened procedural protections. Id. Here, Plaintiff alleges disciplinary findings tied to "unprofessionalism" and misconduct rather than a purely academic performance

determination. Accordingly, the Complaint plausibly alleges circumstances implicating constitutionally sufficient procedural safeguards.

Defendants' motion improperly attempts to resolve factual disputes and characterize the disciplinary proceedings as adequate as a matter of law before any factual development has occurred. Whether Plaintiff received constitutionally sufficient notice, whether she was afforded a meaningful opportunity to respond, whether the disciplinary process was impartial, whether Defendants adequately considered Plaintiff's disabilities, and whether the appeal procedures were meaningful are inherently fact-intensive inquiries inappropriate for resolution on a motion to dismiss. See Tigrett, 290 F.3d at 627–28 emphasizing that adequacy of university disciplinary procedures depends upon the factual circumstances presented.

Defendants likewise overstate the scope of Eleventh Amendment immunity. Although states and state entities generally enjoy immunity from damages claims under § 1983, Plaintiff also seeks prospective declaratory and injunctive relief, including reinstatement into the program and institutional compliance measures. Such claims fall squarely within the Ex parte Young exception and may proceed against state officials acting in their official capacities to remedy ongoing violations of federal law. Ex parte Young, 209 U.S. 123, 159–60 (1908); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 496 (4th Cir. 2005) recognizing that claims for prospective injunctive relief against university officials are not barred by the Eleventh Amendment.

At minimum, Plaintiff has plausibly alleged that Defendants, acting under color of state law, deprived her of protected educational and professional interests without constitutionally adequate procedural safeguards. Those allegations are sufficient to survive dismissal under Rule 12(b)(6).

## C. The Official-Capacity Claims Against the Individual Defendants Should Not Be Dismissed.

Defendants argue that the official-capacity claims against Dr. Carolyn Ringer Lepre, Dr. Laurie Couch, Dr. Dane Foust, and Ms. Aurora Edenhart-Pepe should be dismissed as redundant of the claims asserted against Salisbury University and the University System of Maryland. That argument, however, ignores the nature of the relief sought by Plaintiff and the well-established rule that state officials sued in their official capacities are proper defendants where a plaintiff seeks prospective declaratory and injunctive relief to remedy ongoing violations of federal law.

Under Ex parte Young, "a federal court, consistent with the Eleventh Amendment, may issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." Franks v. Ross, 313 F.3d 184, 197 (4th Cir. 2002); Ex parte Young, 209 U.S. 123 (1908). The doctrine specifically permits suits against state officials in their official capacities where the plaintiff seeks reinstatement or other forward-looking equitable relief. See Lee-Thomas v. Prince George's Cnty. Pub. Schs., 666 F.3d 244, 249 (4th Cir. 2012) (recognizing that claims for prospective injunctive relief against state officials fall within the Ex parte Young exception); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 496 (4th Cir.

13

2005) (holding that Ex parte Young permitted ADA claims for prospective relief against university officials).

Here, Plaintiff expressly seeks reinstatement into Salisbury University's Master of Social Work program, injunctive relief requiring institutional compliance with federal disability law, and implementation of policies and training concerning accommodations and procedural protections. Those forms of relief are inherently prospective in nature and necessarily require the involvement of University officials responsible for implementing and enforcing University policies.

The individually named Defendants occupy or occupied senior leadership and policymaking positions within Salisbury University, including President, Provost, Vice President of Student Affairs, and Vice President of Administration and Finance. Courts routinely recognize that such officials are proper defendants in official-capacity suits seeking institutional reform or reinstatement. See Constantine, 411 F.3d at 496; see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) ("official-capacity actions for prospective relief are not treated as actions against the State").

Defendants also incorrectly contend that the Complaint contains no allegations involving the individual Defendants. At the pleading stage, however, Rule 8 does not require Plaintiff to prove the precise degree of each official's involvement before discovery has occurred. The Complaint identifies the officials, describes their policymaking and administrative roles, and alleges that "Defendants" collectively

participated in the accommodation failures, disciplinary proceedings, dismissal decision, and denial of procedural protections at issue in this matter.

Moreover, collective allegations against institutional officials are sufficient where the claims concern coordinated institutional conduct and policy implementation. See Jordan by Jordan v. Jackson, 15 F.3d 333, 339–40 (4th Cir. 1994) (rejecting heightened pleading standards for § 1983 claims and emphasizing that Rule 8 governs notice pleading); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions."). Plaintiff is not required, prior to discovery, to identify every internal communication, meeting participant, or administrative decision-maker involved in the challenged disciplinary and accommodation processes.

Further, Defendants' reliance on redundancy principles is misplaced because official-capacity defendants remain appropriate where prospective equitable relief is sought against institutional actors charged with enforcing or implementing the challenged policies. See Doe v. Univ. of N.C. Sys., No. 1:19-cv-357, 2020 WL 1245236, at *9 (M.D.N.C. Mar. 16, 2020) (declining to dismiss official-capacity claims against university officials where plaintiff sought injunctive relief related to university disciplinary policies and procedures).

Finally, Defendants note that Dr. Foust and Dr. Couch are allegedly no longer employed by Salisbury University. But that assertion does not warrant dismissal at this stage. Federal Rule of Civil Procedure 25(d) expressly provides for the automatic substitution of public officials sued in their official capacities when personnel changes

15

occur during litigation. Accordingly, any change in employment status is a procedural matter that does not defeat Plaintiff's claims for prospective relief. Because the individually named Defendants are proper official-capacity defendants under Ex parte Young and because the Complaint plausibly alleges institutional conduct attributable to those officials, dismissal of the official-capacity claims is unwarranted.

### D. Alternatively, Plaintiff Should Be Granted Leave to Amend.

Even assuming arguendo that the Court finds any portion of Plaintiff's Complaint insufficiently pleaded, dismissal with prejudice would be improper at this stage. Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires," and the Fourth Circuit has consistently recognized that leave to amend should be denied only in limited circumstances such as bad faith, undue prejudice, or futility. See Foman v. Davis, 371 U.S. 178, 182 (1962); Laber v. Harvey, 438 F.3d 404, 426–27 (4th Cir. 2006) (en banc).

Here, there has been no discovery, no prior amendment addressing the issues raised in Defendants' motion, and no showing of bad faith or prejudice. To the contrary, any perceived deficiencies identified by Defendants could readily be cured through amendment, including by adding additional factual detail regarding Plaintiff's communications with University personnel, the accommodation process, the disciplinary proceedings, and the role of the individual Defendants in the challenged conduct.

16

Courts within the Fourth Circuit routinely hold that dismissal with prejudice is inappropriate where amendment could potentially cure alleged pleading deficiencies. See Ostrzenski v. Seigel, 177 F.3d 245, 252–53 (4th Cir. 1999) ("The court should freely give leave to amend a complaint whenever justice so requires," and dismissal without opportunity to amend is improper unless amendment would be futile.); Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619, 623–24 (4th Cir. 2015) (holding that district courts should generally permit amendment before dismissing claims with prejudice where deficiencies may be curable).

This principle applies with particular force in civil rights and disability discrimination cases, where many of the relevant facts concerning institutional decision-making, internal accommodation procedures, and policymaking authority remain uniquely within Defendants' possession prior to discovery. Dismissal with prejudice at the pleading stage would therefore be especially inappropriate here.

Moreover, Defendants themselves acknowledge several issues that could potentially be addressed through amendment, including allegations regarding the accommodation timeline, the involvement of specific University officials, and the nature of the disciplinary process. Such issues do not demonstrate futility; rather, they confirm that amendment would be the proper remedy if the Court determines that additional factual specificity is warranted. Accordingly, even if the Court concludes that any portion of the Complaint is deficient, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

17

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety. Alternatively, should the Court determine that any portion of the Complaint is insufficiently pleaded, Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a).

Date: May 28, 2026                         Respectfully submitted,


                                           s/ Lynda Sangmor

                                           Lynda Sangmor
                                           Federal Bar # 32171
                                           LLG National Law Group
                                           3003 N Central Ave, Suite 685
                                           Phoenix, AZ 85012
                                           Telephone: 480-745-5863
                                           Email: Lynda.sangmor@llgnational.com

                                           Attorney for Plaintiff

18

## CERTIFICATE OF SERVICE

I certify that, on this 28th day of May, 2026, the foregoing was served by CM/ECF on all registered CM/ECF users.

/s/ Lynda Sangmor
Lynda Sangmor